# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TERRELL WALTON**<br>*Plaintiff,*<br><br>v.<br><br>**JOSEPH CORVI; NICOLE WILSON; PENNSYLVANIA SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS; and MARC SCHADE**<br>*Defendants.* | **CIVIL ACTION NO. 25-1318** |

## MEMORANDUM

**BAYLSON, J.**                                                                                                                    **April 30, 2025**

## I.    INTRODUCTION

Terrell Walton ("Plaintiff") alleges that Defendant Marc Schade prepared an affidavit of probable cause containing false statements and/or omissions which led to Plaintiff's arrest and subsequent prosecution. Plaintiff brings two claims against Defendant Schade for state common law malicious prosecution (Count IV) and for malicious prosecution pursuant to 42 U.S.C. § 1983 (Count VII).

Defendants Joseph Corvi, Nicole Wilson, and Pennsylvania Society for the Prevention of Cruelty to Animals have each answered the Amended Complaint. Defendant Schade moved to dismiss the two claims asserted against him. ECF 4. For the following reasons, Defendant Schade's Motion to Dismiss is **DENIED**.

## II. JURISDICTION

This Court has subject matter jurisdiction over Plaintiff's § 1983 claim against Defendant Schade under 28 U.S.C. § 1331 and exercises supplemental jurisdiction over Plaintiff's state common law malicious prosecution claim. 28 U.S.C. § 1367.

## III. RELEVANT FACTUAL BACKGROUND

The factual background is drawn from the allegations in the Amended Complaint. The Court takes the facts alleged by Plaintiff as true and construes them in his favor, as is required at the motion to dismiss stage. Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

### A. Plaintiff Removes Pitbull From Patrol Car

On August 4, 2021, Philadelphia police officers conducted a traffic stop and arrested Mr. Bryan Landis from his car. Am. Compl. (ECF 1-2) at ¶ 13. Officers commanded Mr. Landis to load his Pitbull dog into the rear seating area of the patrol car, and Defendant Joseph Corvi was assigned to transport the Pitbull to the Philadelphia Animal Care and Control Team for safekeeping. Id., ¶¶ 16, 19–21.

The Amended Complaint alleges that when Defendant Corvi arrived at the facility, the Pitbull began barking and became aggressive. Id., ¶¶ 27–28. Defendant Corvi requested assistance from an animal control professional to escort the Pitbull from the car and into the animal control facility. Id., ¶ 30. The facility's upper management assigned Plaintiff the responsibility of removing the Pitbull from the patrol car. Id., ¶ 39.

The Amended Complaint alleges that as Plaintiff approached the driver's side rear door of the patrol car, the Pitbull displayed "dangerous, threatening, and aggressive tendencies towards the plaintiff." Id., ¶ 40. As a result, Plaintiff determined that he could only safely remove the Pitbull from the patrol car from a distance by using a catch pole, which is a tool used primarily by

2

animal control officers to safely capture and restrain potentially aggressive or dangerous animals from a distance. Id., ¶¶ 38, 42. Plaintiff inserted the catch pole into the rear seating area of the patrol car from a distance and laid the loop at the end of the catch pole around the Pitbull's neck using only his right hand. Id., ¶¶ 45, 50. In response, the Pitbull latched its teeth onto the pole and clenched its jaws on the pole. Id., ¶ 51.

### B. Pitbull is Examined at Animal Control

Plaintiff then led the Pitbull out of the patrol car using the catch pole and escorted the Pitbull to the animal control emergency room. Id., ¶ 52. The Amended Complaint alleges that while inside the building, the Pitbull demonstrated dangerous, threatening, and aggressive tendencies. Id., ¶ 53. Dr. Roxanne Borrok, a doctor of veterinary medicine, examined the Pitbull and allegedly determined that as a result of the Pitbull's display of aggression, it was unsafe to manage the Pitbull without sedation. Id., ¶ 59.

After the Pitbull was sedated, Dr. Borrok examined the Pitbull and diagnosed the Pitbull as having suffered a bi-lateral distal mandibular fracture. Id., ¶¶ 60–62. Dr. Borrok allegedly determined that the fracture could have arisen as a result of a mishandling of the catch pole or by the sheer force of the Pitbull's bite of the catch pole. Id., ¶ 63. The Amended Complaint further alleges that Dr. Borrok reviewed video surveillance footage capturing images of Plaintiff's interaction with the Pitbull and Plaintiff's handling of the catch pole, and allegedly determined that Plaintiff did not mishandle the catch pole. Id., ¶ 64. The Pitball was euthanized at the animal control center on August 4, 2021 due to the severity of the injury. Id., ¶¶ 65–66.

### C. Defendant Schade Prepares Affidavit of Probable Cause

The Amended Complaint alleges that Defendant Marc Schade, a detective in the Philadelphia District Attorney's Office (id., ¶ 11), investigated the events of August 4, 2021 and

prepared an Affidavit of Probable Cause (the "Affidavit") dated May 10, 2022. Id., ¶ 93. Defendant Schade, according to the Amended Complaint, knowingly and deliberately, or with a reckless disregard for the truth, included false statements and omitted facts in the Affidavit which were inconsistent with the video surveillance footage of Plaintiff's handling of the Pitbull with the catch pole. Id., ¶¶ 94–95. The Amended Complaint alleges that as a "direct result" of the Affidavit allegedly containing false and fabricated information, the Philadelphia District Attorney's Office criminally charged Plaintiff with violating 18 Pa. C.S.A. § 5534 (relating to Aggravated Cruelty to Animals Causing Serious Bodily Injury or Death) and 18 Pa. C.S.A. § 5533 (relating to Cruelty to Animals). Id., ¶¶ 97–103.

### IV.  PROCEDURAL HISTORY

Plaintiff commenced this action in the Pennsylvania Court of Common Pleas, Philadelphia County on December 2, 2024, asserting state law malicious prosecution claims. ECF 1-1. On February 11, 2024, Plaintiff filed an Amended Complaint in the Court of Common Pleas, bringing seven claims against all Defendants:

1. Common law state claim for malicious prosecution, against Defendant Joseph Corvi;

2. Common law state claim for malicious prosecution, against Defendant Nicole Wilson;

3. Common law state claim for malicious prosecution – vicarious liability, against Defendant Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA");

4. Common law state claim for malicious prosecution, against Defendant Marc Schade;

5. 42 U.S.C. § 1983 malicious prosecution in violation of the Fourth Amendment, against Defendant Joseph Corvi;

6. 42 U.S.C. § 1983 malicious prosecution in violation of the Fourth Amendment, against Defendant Nicole Wilson; and

4

7. 42 U.S.C. § 1983 malicious prosecution in violation of the Fourth Amendment, against Defendant Marc Schade.

ECF 1-2. On March 12, 2025, Defendant Joseph Corvi removed the case to this Court pursuant to 28 U.S.C. § 1441, with the consent of all other Defendants. ECF 1 at ¶ 9.

Defendants Joseph Corvi (on March 19, 2025), Nicole Wilson (on March 21, 2025), and the PSPCA (on March 25, 2025) each answered the Amended Complaint. See ECF 6–8. On March 18, 2025, Defendant Marc Schade filed a Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6). ECF 4. Plaintiff responded to the Motion on April 1, 2025. ECF 11.

V. **PARTIES' CONTENTIONS**

Defendant Schade argues that the Amended Complaint fails to state a claim for malicious prosecution, either under Federal or State law, because Defendant Schade had probable cause to arrest Plaintiff and there are no colorable allegations of malice in the Amended Complaint. ECF 4 at 8–13. Defendant Schade further contends that he is immune from liability. As to the § 1983 claim, Defendant Schade argues probable cause existed on the misdemeanor charge of animal cruelty even if not for the felony charge, so he is entitled to qualified immunity because Third Circuit law was not clearly established whether probable cause for one charge defeats a malicious prosecution claim. Id. at 13–15. Defendant Schade also asserts that the State common law claim is barred by Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"). Id. at 15–17.

In response, Plaintiff counters that the Amended Complaint sufficiently alleges that Defendant Schade knew statements he made in the Affidavit to be false, he omitted other pertinent facts, that no reasonable person could infer probable cause existed, and that the Amended Complaint sufficiently pleads malice. ECF 11-1 at 6–13. As to qualified immunity, Plaintiff

argues that Defendant Schade should have known that his conduct would violate Plaintiff's constitutional rights.[1]  Id. at 13–15.  Lastly, Plaintiff responds that the PSTCA does not bar a malicious prosecution claim which is an intentional tort that constitutes willful misconduct, an exemption to the PSTCA's grant of immunity.  Id. at 15–16.

VI. **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (citation omitted).  Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. University of Sciences, 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

---

[1] Plaintiff's response to the qualified immunity argument misses the crux of Defendant Schade's argument, as this Court understands it – Plaintiff argues that Defendant Schade should have known that including false information in an affidavit of probable cause is unlawful.  However, Defendant Schade's qualified immunity argument specifically addresses the Third Circuit's "any crime" rule and whether it was clearly established at the time that probable cause for one charge does not defeat a malicious prosecution claim alleging absence of probable cause for another charge.

VII. **DISCUSSION**

Plaintiff alleges two causes of action against Defendant Marc Schade for malicious prosecution; one count is pursuant to 42 U.S.C. § 1983 alleging Defendant Schade violated Plaintiff's Fourth Amendment rights and the second count arises under Pennsylvania State common law.

A. **Malicious Prosecution (Federal and State)**

A claim for Fourth Amendment malicious prosecution under § 1983 requires Plaintiff to establish that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [Plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Halsey v. Pfeiffer, 750 F.3d 273, 296–297 (3d Cir. 2014). The legal standard is the same for State common law malicious prosecution except Plaintiff does not need to show he suffered a deprivation of liberty. Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249, 544 A.2d 940, 941 (Pa. 1988). An officer can be liable for malicious prosecution "[i]f the officer[] influenced or participated in the decision to institute criminal proceedings[.]" Halsey, 750 F.3d at 297.

Defendant Schade disputes factors three and four, arguing that the claims for malicious prosecution fail because probable cause existed to charge Plaintiff, and the Amended Complaint does not allege Defendant Schade acted maliciously. The Court addresses each argument in turn.

1. **Probable Cause**

In evaluating probable cause to initiate a legal proceeding, the Court considers whether "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves

to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). Because this inquiry requires evaluating the facts available to the officer, the Third Circuit has stated that "[t]he question of probable cause in a section 1983 damage suit is one for the jury." Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998).

The thrust of Plaintiff's allegations against Defendant Schade are that Defendant Schade prepared an Affidavit of Probable Cause (the "Affidavit") in which he knowingly, or with a reckless disregard for the truth, included statements of fact or omitted facts that were inconsistent with video footage capturing Plaintiff's alleged handling of the Pitbull outside the animal control facility. Am. Compl., ¶¶ 92–96. Where, as here, Plaintiff alleges "that an accurate affidavit would not establish probable cause," Plaintiff must show (1) "that the officer, with at least a reckless disregard for the truth, 'made statements or omissions that create[d] a falsehood in applying for a warrant,'" and (2) "that those assertions or omissions were 'material, or necessary, to the finding of probable cause.'" Dempsey v. Bucknell Univ., 834 F.3d 457, 468–69 (3d Cir. 2016) (quoting Wilson v. Russo, 212 F.3d 781, 786–87 (3d Cir. 2000)). While a factor to consider, "an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability[.]"[2] Wilson, 212 F.3d at 786.

---

[2] Defendant Schade argues that there is a rebuttable presumption probable cause exists to defeat a malicious prosecution claim where the Philadelphia Municipal Court Judge determined at the preliminary hearing that there was a *prima facie* criminal case against Plaintiff on all charges. ECF 4 at 9 n.3 (citing Rose v. Bartle, 871 F.2d 331, 352 (3d Cir. 1989)). However, Rose addressed a *prima facie* case in the context of grand jury indictments or presentments, not necessarily a state court preliminary hearing. Further, the Third Circuit in Montgomery v. De Simone, 159 F.3d 120, 125 (3d Cir. 1998) limited Rose's application, holding that a presumption of probable cause does not apply to a § 1983 malicious prosecution action where the plaintiff's conviction in municipal court was overturned.

Defendant Schade attaches the Affidavit to his Motion and argues that the Affidavit shows probable cause existed to charge Plaintiff.[3] The Court declines to reach such a conclusion at this stage.

### a. False Statements or Omissions

The Amended Complaint alleges that the Affidavit contains both false statements and omits certain pertinent facts. "[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting" and "omissions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" Wilson, 212 F.3d at 783, 787–88 (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993)). The Court "look[s] only to the information available to the officer at the time of the swearing of the affidavit of probable cause." Dempsey, 834 F.3d at 471.

According to the Amended Complaint, the Affidavit allegedly contained the following false statements:

- Defendant Joseph Corvi's false accusation the plaintiff jabbed at the Pitbull with a 6-8-foot-long catch pole while the Pitbull was confined in the rear of a radio patrol car;

- Defendant Joseph Corvi's false accusation the plaintiff moved his hands up and all around using the catch pole;

- Defendant Joseph Corvi's false accusation the plaintiff moved his hands up and all around using the catch pole;

- Defendant Joseph Corvi's false accusation the plaintiff used two (2) hands when laying the loop or snare mechanism at the end the catch pole around the Pitbull's neck;

---

[3] The Court considered the Affidavit attached to Defendant Schade's Motion to Dismiss. ECF 4-1; Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Plaintiff's claims against Defendant Schade stem from the Affidavit and Plaintiff does not dispute the Affidavit's authenticity.

- Defendant Nicole Wilson's false accusation the plaintiff stuck the control stick inside the police vehicle and violently moved the stick;

- Defendant Nicole Wilson's false accusation the plaintiff used two (2) hands to shift and twist the pole in an attempt to catch the dog;

- Defendant Nicole Wilson's false accusation plaintiff improperly used the catch pole;

- Defendant Nicole Wilson's false accusation the plaintiff struggled with the catch pole for several minutes;

- Defendant Nicole Wilson's false accusation the plaintiff forcefully removed the Pitbull from the rear of the radio patrol car;

- Defendant Nicole Wilson's false accusation the plaintiff forcefully dragged the Pitbull into the Animal Care and Control Team of Philadelphia's building;

- Defendant Nicole Wilson's false accusation the plaintiff recklessly illtreated the Pitbull;

- Defendant Nicole Wilson's false accusation the plaintiff abused the Pitbull;

- Defendant Nicole Wilson's false accusation the plaintiff recklessly caused the Pitbull to suffer bodily injury; and

- Defendant Nicole Wilson's false accusation the plaintiff recklessly created a risk the Pitbull would suffer serious bodily injury.

Am. Compl., ¶ 95(a)–(n). The Amended Complaint alleges that Defendant Schade had reasons to doubt the truth of these statements because they were allegedly "patently inconsistent with video surveillance footage." Id. The Court reasonably infers from the Amended Complaint's allegation that Defendant Schade "undertook an investigation of the events occurring August 4, 2021" that Defendant Schade would have considered that video surveillance footage at the time he signed the Affidavit. Id., ¶ 92.

The Amended Complaint additionally alleges that Defendant Schade omitted several facts in the Affidavit, including:

- Veterinary Dr. Roxanne Borrok maintained the opinion plaintiff did not mishandle the catch pole securing the Pitbull from the inside of the radio patrol car;

- Veterinary Dr. Roxanne Borrok maintained the opinion injury to the Pitbull's mandible arose from the sheer force of the dog's bite upon the catch pole;

Id., ¶ 95(o)–(p). Such information—the opinion of the treating veterinarian—can plausibly be considered information that a judge evaluating an affidavit of probable cause would wish to know. See Wilson, 212 F.3d at 787–88. Defendant Schade's position that "it is not clear on the record whether HSPO Wilson—much less Detective Schade—even knew of Dr. Borrok's conflicting opinion" when preparing the Affidavit is unavailing; the record is not yet developed, and all inferences must be drawn in Plaintiff's favor. ECF 4 at 12. The Court reasonably infers from the Amended Complaint's allegations that Defendant Schade knew of Dr. Borrok's conflicting opinion and did not state it in the Affidavit.

      b. **Materiality**

"To be constitutionally suspect, the misstatements and omissions must have been 'material, or necessary, to the finding of probable cause.'" Pinkney v. Meadville, Pennsylvania, 95 F.4th 743, 748–49 (3d Cir. 2024) (quoting Wilson, 212 F.3d at 789)). In assessing materiality, the Court reconstructs the affidavit of probable cause by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted," and then determining whether the revised affidavit would have "suffic[ed] in themselves to warrant a reasonable person to believe" that Plaintiff had committed animal cruelty offenses. Wilson, 212 F.3d at 789 (quoting Orsatti, 71 F.3d at 483).

The Amended Complaint alleges facts contrary to many of the critical allegations supporting probable cause in the Affidavit and alleges that video surveillance footage—which Defendant Schade was allegedly aware of—discredits the Affidavit's version. Whether or not probable cause existed here thus relies, in part, on a credibility determination between Plaintiff

11

and Defendants Wilson and Corvi as to what the video depicts.  Cf. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (stating that "where the probable cause determination rests on credibility conflicts," it is "particularly true" that it should be resolved by a jury).  At this juncture, the Court will not undertake a factual inquiry to resolve these disputes.  Groman v. Twp. Of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995) ("Generally, the existence of probable cause is a factual issue.").  All that is relevant here is that without all of the alleged false statements and with the alleged omissions inserted into the Affidavit, the Amended Complaint plausibly pleads the absence of probable cause.

2. **Malice**

Defendant Schade next argues that the Amended Complaint fails to sufficiently allege that Defendant Schade acted against Plaintiff with malice.  "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose."  Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988), abrogated on other grounds, Albright v. Oliver, 510 U.S. 266 (1994).  An officer's decision to "omit crucial exculpatory information from [an] affidavit of probable cause" can show malice.  Harvard v. Cesnalis, 973 F.3d 190, 203 (3d Cir. 2020).  The Amended Complaint sufficiently alleges that Defendant Schade omitted Dr. Borrok's opinion that the Pitbull's injuries may not have been caused by Plaintiff's handling of the catch pole.  This is sufficient at this stage to plausibly plead malice.

B. **Immunity Defenses**

The Court declines to rule at this stage whether Defendant Schade is entitled to qualified immunity on the § 1983 claim or immunity under the PSTCA, as each of those defenses requires a more complete record and additional factual development.

Defendant Schade asserts he is entitled to qualified immunity on the § 1983 claim because probable cause existed to charge Plaintiff with a misdemeanor even if not the felony.[4] Under the Third Circuit's "any crime" jurisprudence as it existed at the time of arrest, "probable cause need[s] only [to] exist as to 'any offense that could be charged under the circumstances' to defeat false arrest and malicious prosecution claims." ECF 4 at 14 (quoting Wright v. City of Phila., 409 F.3d 595, 604 (3d Cir. 2005)). But Defendant Schade's qualified immunity argument requires this Court to make inferential leaps in Defendant's favor that it cannot make on a motion to dismiss. Defendant assumes probable cause existed on the misdemeanor charge because "[a]t the very least, Detective Schade had reasonable grounds to believe that Plaintiff had *recklessly* ill-treated the dog, sufficient to sustain a probable cause determination for the misdemeanor offense."[5] ECF 4 at 10. However, the Amended Complaint, which the Court must accept as true, alleges that Dr. Borrok "determined there was no mishandling of the catch pole." Am. Compl., ¶¶ 63–64, 95(o). And while Defendant Schade contends he reasonably based his Affidavit on the accounts of Defendants Wilson and Corvi, the Amended Complaint alleges that their accounts are patently inconsistent with video surveillance footage. Id. ¶¶ 92–95.

Defendant Schade also asserts he is immune from liability on the State claim under the Political Subdivision Tort Claims Act ("PSTCA"), which limits recovery against an employee of a local agency. 42 Pa. C.S.A. § 8545. However, the PSTCA's limitations do not apply where it

---

[4] Plaintiff was criminally charged with violating 18 Pa. C.S.A. § 5534 (a felony) and 18 Pa. C.S.A. § 5533 (a misdemeanor). A person commits cruelty to animals (misdemeanor) "if the person intentionally, knowingly or recklessly illtreats, overloads, beats, abandons or abuses an animal." 18 Pa. C.S.A. § 5533.

[5] Pennsylvania law provides that "[a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa. C.S.A. § 302(b)(3).

is judicially determined that the act of the employee "constituted a crime, actual fraud, actual malice or willful misconduct." Id. at § 8550. As the Amended Complaint sufficiently pleads malicious prosecution, the Court cannot apply PSTCA immunity at this stage. See Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000) (Van Antwerpen, J.) ("Malicious prosecution is an intentional tort that falls within 42 Pa. C.S.A. § 8550.").

Defendant Schade may raise these defenses at summary judgment after discovery and a more developed factual record.

## VIII. CONCLUSION

For the foregoing reasons, Defendant Schade's Motion to Dismiss is **DENIED**. An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 25\25-1318 Walton v Corvi\25-1318 Memo re MTD.docx